## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### Case No. 0:15-cv-62571

GHOSTBED, INC.; and WERNER MEDIA
PARTNERS, LLC d/b/a NATURE'S SLEEP,
LLC,

       **Plaintiffs,**

v.

CASPER SLEEP, INC. RED ANTLER,
LLC; and ICS INC.,

       **Defendants.**

_____/

### SECOND AMENDED COMPLAINT

Plaintiffs, GhostBed, Inc. ("GhostBed") and Werner Media Partners, LLC d/b/a Nature's

Sleep, LLC ("Nature's Sleep"), for their complaint state:

#### INTRODUCTION

1.     This is an action for damages and injunctive relief arising, inter alia, out of

Defendants' unlawful conduct in trading on the goodwill of and misappropriating the valuable

trademark rights of Plaintiffs and out of Defendants' unfair competition and unfair and deceptive

trade practices.

2.     Upon information and belief, Defendants, Casper Sleep, Inc. ("Casper"), Red

Antler LLC ("Red Antler), and ICS Inc. ("ICS"), engaged in—and knowingly facilitated and

encouraged others to engage in—unlawful business practices involving the violation of Nature's

Sleep's valuable trademark rights and involving false and misleading advertising of Casper's

products and Ghostbed's products.

## THE PARTIES

3.      GhostBed is a Delaware corporation with its principal place of business in Broward County, Florida.   GhostBed is engaged in the business of, among other things, manufacturing and selling mattresses, beds, pillows, toppers, and foundations.

4.      Nature's Sleep is an Illinois limited liability corporation with its principal place of business in Broward County, Florida.  Nature's Sleep is engaged in the business of, among other things, manufacturing and selling mattresses, beds, pillows, toppers, and foundations.

5.      Upon information and belief, Casper Sleep is a Delaware corporation with its principal place of business in New York County, New York.  Casper is engaged in the business of, among other things, manufacturing and selling mattresses and beds.

6.      Upon information and belief, Red Antler is a New York limited liability company with a principal place of business in King's County, New York.  Red Antler is engaged in the business of, among other things, marketing for startups.   Upon information and belief, Red Antler's clients include Casper.

7.      Upon information and belief, ICS is a Cayman Islands corporation with a principal place of business in Grand Cayman, Cayman Islands.  ICS is engaged in the business of, among other things, registering domain names.  Upon information and belief, ICS registered the website www.naturesleep.com (the "Cybersquatted Domain Name") for Casper.

## JURISDICTION AND VENUE

8.      Jurisdiction in this Court is proper pursuant to 28 U.S.C. §§ 1331, 1338, and 1367 because the claims for violations of the United States Trademark Act, Title 15 of the United States Code, arise under federal law.  Further, this Court has supplemental jurisdiction under 28

U.S.C. § 1367 because the state law claims are so related to the federal claims that they form part of the same case or controversy.

9.     Upon information and belief, Casper performed the acts complained of in this complaint willfully with knowledge that both GhostBed and Nature's Sleep maintained their principal place of business in Broward County, Florida, and caused substantial harm to GhostBed and Nature's Sleep within this district.

10.    Upon information and belief, Casper directs advertising towards and sells infringing products to customers in Florida and has accepted payments from customers in Florida.

11.    Casper is subject to the personal jurisdiction of this Court pursuant to Florida Statutes § 48.193.  Casper has committed various tortious acts within this State. Casper has caused injury to persons within this State arising out of an act or omission by Casper outside of this State while Casper engaged in solicitation of service activities within this State.  Casper has caused injury to persons within this State arising out of an act or omission by Casper outside of this State while products, materials, or things processed, serviced, or manufactured by Casper were used or consumed within this State in the ordinary course of commerce, trade, or use.

12.    Upon information and belief, Red Antler is subject to the personal jurisdiction of this court because it developed the BETTER SLEEP FOR BRIGHTER DAYS mark for Casper and, knowing of Nature's Sleep's rights to that mark, it induced  Casper to use that mark in this district and elsewhere.  Further, Red Antler is itself advertising for Casper using the mark where such advertising is directed nationally and internationally, including in this district.

13.    Therefore, Red Antler is subject to the personal jurisdiction of this Court pursuant to Florida Statutes § 48.193.  Red Antler has committed or contributed to the commission of

various tortious acts within this State.  Red Antler has caused injury to persons within this State arising out of an act or omission by Red Antler outside of this State while Red Antler engaged in solicitation of service activities within this State.  Red Antler has caused injury to persons within this State arising out of an act or omission by Red Antler outside of this State while products, materials, or things processed, serviced, or manufactured by Red Antler were used or consumed within this State in the ordinary course of commerce, trade, or use.

14.     Upon information and belief, ICS is subject to the personal jurisdiction of this Court because it registered the Cybersquatted Domain Name in an attempt to deceptively redirect business from Nature's Sleep to Casper.

15.     Therefore, ICS is subject to the personal jurisdiction of this Court pursuant to Florida Statutes § 48.193.  ICS has committed various tortious acts within this State.  ICS has caused injury to persons within this State arising out of an act or omission by ICS outside of this State while ICS engaged in solicitation of service activities within this State.  ICS has caused injury to persons within this State arising out of an act or omission by ICS outside of this State while products, materials, or things processed, serviced, or manufactured by ICS were used or consumed within this State in the ordinary course of commerce, trade, or use.

16.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) and (b) because a substantial part of the events or omissions giving rise to the claims occurred in this district and the impact of Defendants' misconduct occurred in this district.

## FACTUAL BACKGROUND

17.     Nature's Sleep was founded in 2001 and is family owned and operated with its headquarters in Plantation, Florida.  Nature's Sleep sells mattresses, beds, pillows, toppers, and

foundations and has received many favorable reviews from customers and from independent reviewers in the mattress industry.

18.     GhostBed was founded in 2015 pursuant to a plan developed in 2011 and is also owned and operated by the same family with its headquarters in Plantation, Florida.  GhostBed also sells mattresses, beds, pillows, toppers, and foundations and has received many favorable reviews from customers and from independent reviewers in the mattress industry.

19.     GhostBed and Nature's Sleep have found a great deal of success in the mattress business and have gone to substantial lengths to protect their intellectual property.

20.     Nature's Sleep was one of the first in the mattress business—well before the acts complained of in this complaint—to deliver a "bed in a box" concept direct to consumers and one of the first to deliver a foundation or boxspring in a box direct to consumers.   Both GhostBed's and Nature's Sleep's products come vacuum-sealed in a box and inflate when the packaging is opened.

21.     Nature's Sleep is the owner of the trademarks NATURE'S SLEEP, NATURE'S SLEEP Logo, GHOSTBED, and BETTER SLEEP FOR BRIGHTER DAYS, all of which are in use and have been in continuous use since well prior to the acts complained of in this complaint (the "Marks").

22.     These Marks are inherently distinctive and have been extensively used by GhostBed and Nature's Sleep in relation to sleep products and mattresses throughout the United States and have achieved significant fame and secondary meaning.

23.     Nature's Sleep is the owner of the following registrations for marks that include NATURE'S SLEEP, Registration Numbers:

3,731,815                    3,802,848

3,878,747               4,912,360

4,240,084               4,912,361

(the "Nature's Sleep Registered Marks"). Such marks are in use and have been in continuous use since well prior to the acts of Casper complained of herein.

24.     Nature's Sleep is the owner of the following applications for marks that include GHOSTBED, Application Numbers:

86/842,937               86/842,977

(the "GhostBed Applications"). GhostBed is the licensee of the GHOSTBED marks.

25.     Nature's Sleep is also the owner of U.S. trademark application 86/842,644 and 86/842,536 for BETTER SLEEP FOR BRIGHTER DAYS which is in use and has been in continuous use since well prior to the acts of Casper complained of herein.

26.     Unlike traditional mattress manufacturers which sell their products from brick and mortar stores utilizing salespeople and containing showrooms where consumers can test-drive various mattresses and conduct side-by-side comparisons, Ghostbed's and Casper's bed-in-a-box products are marketed and sold directly to consumers on-line via an e-commerce platform, where buying is as easy as clicking a button, and, following the sale, Ghostbed and Nature's Sleep deliver the mattress products directly to the consumer for a risk-free trial.

27.     Since Ghostbed's founding in 2015, Nature's Sleep and Ghostbed have engaged in a major online marketing campaign and Ghostbed has become one of the leading bed-in-a-box companies.

28.     The evolution of ecommerce and the decline of brick-and-mortar showrooms has severely limited the ability of consumers to conduct side-by-side mattress comparisons and frequently resulted in consumer mattress purchases sight unseen. This created a need for online

mattress reviews of both traditional and bed-in-a-box mattresses.  As a result, consumer and professional or expert mattress reviews have become an important part of ecommerce and the marketing strategy of the bed-in-a-box mattress industry.

29.     Websites, including Sleepopolis, Mattress Nerd and Sleep Sherpa, have offered such professional and/or "product-tested" mattress reviews and mattress comparisons to assist consumers with their mattress purchases. These websites also contained links to the websites of some mattress manufacturers and other websites, including Amazon.com, where consumers can purchase the mattresses online.  Highly visible and respected mattress reviews have a significant impact on consumers online purchasing decisions.

30.     Casper is also in the business of selling mattresses and beds and has its headquarters in New York.

31.     Phillip Krim is one of the founders of Casper.  This is not Krim's first foray into the mattress business.  Upon information and belief, Krim has also operated a number of other mattress businesses including Sleep Products D2C, Inc., Sleep Better Store, LLC, dreamnumber.com, and Angel Beds LLC (the "Prior Businesses").

32.     Upon information and belief, Krim's Prior Businesses were subject to litigation surrounding accusations of patent and trademark infringement, including using another mattress manufacturer's trademark in domain names, namely, cybersquatting.  Upon information and belief, Krim was forced to rebrand the Prior Businesses as a result of his previous litigation.  As a result, Casper's actions are purposeful, with knowledge and intent and are not the subject of mistake.

33.     Upon information and belief, Casper was created to and does in fact compete with Nature's Sleep in the "bed in a box" category.  Upon information and belief, Casper intentionally

set out to trade on the goodwill of and misappropriate GhostBed's and Nature's Sleep's valuable trademarks and to compete unfairly as described herein.

34.     Ghostbed's main competitors in the ecommerce bed-in-a-box mattress market include Casper, among others.

### THE ACCUSED MISCONDUCT

35.     ICS registered the "Cybersquatted Domain Name."   When consumers were looking for plaintiff Nature's Sleep and chose the www.naturesleep.com website expecting to find Nature's Sleep, they were redirected to Casper's website, www.casper.com.

36.     Upon information and belief, Casper worked in concert with ICS to register the Cybersquatted Domain Name and to direct traffic from that domain to the Casper website.

37.     In addition, upon information and belief, Casper advertised with Google and other search engines with the intent to misdirect users looking for GhostBed and Nature's Sleep products.  This included purchasing keyword search terms—Google's "AdWords"—and using the advertising associated with the results of searches using the AdWords in a way that customers searching for GhostBed and Nature's Sleep would be misled and directed to a website for Casper's products instead of GhostBed.

38.     For example, Casper has purchased search terms using Nature's Sleep's trademark GHOSTBED and posted an ad to be seen in the results of such a search which has as a headline "SURELY YOU MEANT CASPER? – THE ORIGINAL CASPER MATTRESS." Upon information and belief, this would deceive consumers into believing that because of the famous CASPER THE FRIENDLY GHOST, consumers did not properly remember the mattress name they were looking for.  Thus, Casper's ad would likely confuse consumers into believing that Casper was the proper name of the GhostBed product that they were looking for.

39.     In addition, upon information and belief, Casper used Nature's Sleep's slogan BETTER SLEEP FOR BRIGHTER DAYS on Casper's website and on point-of-sale materials for its competing mattresses, knowing of Nature's Sleep prior rights to that slogan mark.

40.     Upon information and belief, Red Antler was aware that the slogan mark BETTER SLEEP FOR BRIGHTER DAYS was in use and protected under common law and nevertheless induced Casper to infringe and assisted in the infringement through the use of that slogan mark.  In addition, Red Antler posts advertising for Casper using this slogan mark on Red Antler's website.

41.     GhostBed, Nature's Sleep, and Casper sell directly competing products and to the same and similar customers through the same channels of trade utilizing the same and similar advertising vehicles.

42.     This conduct individually and the combination of this conduct and the use of the Marks creates a likelihood of confusion for customers as to an affiliation between Casper and GhostBed and Nature's Sleep.  It also creates a likelihood of confusion as to the source of Casper's products.

43.     In addition, upon information and belief, Casper rewarded, paid for, or coerced reviewers—who appear to the public as independent reviewers—to review Casper's products more favorably than those reviewers have in fact independently reviewed Casper's products.

44.     Upon information and belief, when mattress reviewers, including Sleepopolis.com, MattressNerd.com, and Sleepsherpa.com, refused to post more favorable Casper mattress reviews, Casper or someone acting on Casper's behalf attempted to strong-arm and coerce the reviewers into publishing positive reviews of Casper's mattresses.  Such coercion and strong-arming included, for example, the use of various Google search engine techniques

such as negative search engine optimization "SEO" attacks to reduce the visibility of the reviewers' negative reviews of Casper mattresses and the reviewers' more favorable reviews and comparisons of Casper's competitors' mattresses, including Ghostbed's mattresses, to Casper's mattresses.

45.     Such actions also included, for example, Casper suing the owners of Sleepopolis.com, MattressNerd.com, and Sheepsherpa.com and using its financial power to settle those cases in a way which effectively eliminated the negative reviews and silenced its critics. The reviews of Casper which were eliminated included comparative reviews with Ghostbed where Ghostbed's mattress was reviewed more favorably than Casper's mattress.

46.     In addition, Casper, or someone acting at Casper's behalf, employed other Google search engine techniques so that positive reviews and statements about Casper and its mattresses would be more visible to consumers and less positive reviews and statements would be less visible.

47.     These actions benefitted Casper by, for example, creating a false appearance and/or giving the false impression that Casper's mattresses are viewed by mattress reviewers more favorably than they actually are.  These actions also had the effect of reducing the visibility of positive reviews and favorable comparisons of Ghostbed's mattresses to Casper's mattresses thereby injuring Plaintiffs.

48.     Because consumers will not be able or will only be able with great difficulty to test the mattresses that originate with Ghostbed and Casper and other on-line mattress companies, they are heavily dependent on on-line mattress reviews.  Consumers who want to make a decision regarding which on-line mattress to purchase are aware of the major on-line mattress manufacturers and require a review site that reviews all major on-line mattress

manufacturers.  Thus, by eliminating Casper reviews in review sites that poorly review Casper or by reducing their visibility, Casper compels consumers to use the review sites that rate it favorably and have reviews of the range of major on-line mattress companies.  In this way, Casper gives a false impression to consumers about its mattresses.

49.    By decreasing the visibility of unfavorable or negative reviews of Casper's products, Ghostbed was directly adversely impacted because traffic and sales from those reviewers' websites decreased.  For example, as a result of Casper's campaign to decrease the visibility of the negative or less positive reviews of Casper and the more favorable comparisons or reviews of Ghostbed to Casper on for example, Sleepopolis.com, MattressNerd.com, and Sleepsherpa.com, the amount of traffic and sales to Ghostbed from those websites decreased whereas the amount of traffic and sales from review websites such as Mattressclarity.com who were not a part of Casper's invisibility campaign increased.

50.    Casper's actions also negatively impacted Ghostbed because by eliminating or reducing the visibility of bad Casper reviews, Casper invalidated those reviewers' websites as proper review sites.  As a result, consumers interested in full range of major on-line mattress comparisons were compelled to go to the websites of mattress reviewers who are more visible or are permitted to post reviews of Casper mattresses and their Casper reviews are positive or more favorable to Casper.  This resulted in a decrease in traffic and sales to Ghostbed coming from, for example, Sleep Sherpa and Mattress Nerd, who are as a result of Casper's conduct prohibited from publishing Casper reviews.

51.    Consumers who are looking to buy on-line mattresses require a mattress review site that provides the full range of major on-line mattresses.  Thus, they cannot rely on websites without a Casper review.  Thus, by eliminating poor Casper reviews, consumers must go instead

to a website with a favorable Casper review. As a result, the traffic and sales to Ghostbed from the original websites has declined because consumers will not use those websites and instead use websites which generate less traffic and sales to Ghostbed. Further, those websites with favorable Casper reviews send more traffic and sales to Casper.

52. Upon information and belief, Casper has posted comments or paid for or caused comments to be posted on the Internet, including in social media, which appear to the public to be independently posted comments that either denigrate GhostBed and Nature's Sleep or promote Casper. In addition, many of those comments are false and misleading.

53. For example, Casper posted an advertisement that appeared when "GhostBed" was searched using Google stating "WHY BUY A COPYCAT? | CASPER.COM." This falsely represents GhostBed as a Casper "copycat".

54. Upon information and belief, Casper either directly or indirectly made false, misleading, and disparaging comments in Internet posts about GhostBed and Nature's Sleep.

55. In addition, upon information and belief, Casper has misrepresented the country of origin of some of the fabric content of its products.

## COUNT I
### FEDERAL TRADEMARK INFRINGEMENT

56. Plaintiffs incorporate by reference paragraphs 1 through 55 as though fully set forth herein.

57. Nature's Sleep is the owner of federal registrations for its mark NATURE'S SLEEP as set out in detail above.

58.     GhostBed and Nature's Sleep have no connection with Casper or ICS and have not granted any license or consent—express or implied—to Defendants to use Nature's Sleep's distinctive and famous Marks.

59.     Defendants Casper and ICS have used the mark NATURE'S SLEEP in a way that is likely to cause confusion among consumers as to the source, origin, sponsorship, or affiliation of Casper's products.

60.     Casper's use of NATURE'S SLEEP in connection with the promotion and sale of its competing mattress products has caused—and will continue to cause—a likelihood of confusion, mistake, and deception as to the source or origin of Casper's goods in that the trade and the consuming public are likely to believe that Casper's goods are sponsored, approved by, or licensed by GhostBed and Nature's Sleep.

61.     Upon information and belief, Casper's adoption and use of NATURE'S SLEEP was intentional and was for the purpose of misleading the trade and consuming public.   In addition, Casper's and ICS's conduct constitutes an attempt to trade on the goodwill developed in the Registered Marks, all to the damage of GhostBed and Nature's Sleep.   These willful actions are in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

62.     GhostBed and Nature's Sleep have been damaged by the aforementioned acts in an amount to be determined at trial.   Casper's and ICS's continued unlicensed adoption and use of NATURE'S SLEEP was done intentionally, willfully, maliciously, in bad faith, and in conscious disregard for GhostBed's and  Nature's Sleep's rights.

63.     Casper and ICS, in committing the foregoing acts in commerce, have damaged, and will continue to damage, GhostBed and Nature's Sleep and their reputation and goodwill and Casper and ICS have been and will continue to be unjustly enriched at the expense of GhostBed

and Nature's Sleep who have no adequate remedy at law to completely redress such acts, and will be irreparably damaged unless they are enjoined from committing and continuing to commit such acts.

**COUNT II**

**CONTRIBUTORY FEDERAL TRADEMARK INFRINGEMENT**

64.     Plaintiffs incorporate by reference paragraphs 1 through 55 as though fully set forth herein.

65.     ICS registered the Cybersquatted Domain Name shortly after Casper was launched.

66.     As set out in above, ICS directly infringed GhostBed's and Nature's Sleep's rights in the NATURE'S SLEEP marks.

67.     Plaintiffs anticipate that discovery will reveal that Casper was aware that the NATURE'S SLEEP marks were in use and protected under federal law and nevertheless induced ICS to infringe by using that mark.

68.     Plaintiffs anticipate that discovery will reveal that Casper induced ICS to assist Casper in its infringement of the NATURE'S SLEEP marks.

69.     GhostBed and Nature's Sleep have been damaged by the aforementioned acts in an amount to be determined at trial.

70.     Casper and ICS, in committing the foregoing acts in commerce, have damaged, and will continue to damage, GhostBed and Nature's Sleep and their reputation and goodwill, and Casper and ICS have been and will continue to be unjustly enriched at the expense of GhostBed and Nature's Sleep who have no adequate remedy at law to completely redress such

acts, and will be irreparably damaged unless they are enjoined from committing and continuing to commit such acts.

## COUNT III
### FEDERAL UNFAIR COMPETITION

71.     Plaintiffs incorporate by reference paragraphs 1 through 55 as though fully set forth herein.

72.     The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

73.     Defendants' conduct, as described above, in using the marks NATURE'S SLEEP, GHOSTBED and BETTER SLEEP FOR BRIGHTER DAYS constitutes use of false designations of origin and false or misleading descriptions or representations of fact on or in connection with Casper's goods.  This is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Casper with GhostBed and Nature's Sleep, and/or as to the origin, sponsorship, or approval of Casper's goods, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

74.     Defendants' conduct constitutes an attempt to trade on the goodwill that GhostBed and Nature's Sleep have developed in the Marks, all to the damage of GhostBed and Nature's Sleep.

75.     Defendants' use in commerce of designations which are identical and/or confusingly similar to the Marks, despite its having notice of Plaintiffs' prior rights in and to the Marks, constitutes intentional conduct by Defendants to make false designations of origin and false descriptions about Casper's goods and commercial activities.

76.     In addition, Defendants' conduct, as described above, including their conduct in posting false, misleading and confusing posts on social media and encouraging others to make false, misleading and confusing statements constitutes false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

77.     Further, as more particularly described in paragraphs 43 through 55, Casper has engaged in false and misleading advertising or contributory false and misleading advertising by way of a device or mechanism through which it, among other things, manipulated internet search engine results to create the false impression about Casper's mattresses and its reviews and about Ghostbed's mattresses and its reviews.

78.     Casper and those acting on Casper's behalf willfully and intentionally used these devices in commercial advertising and promotion for the specific purpose of increasing the sale visibility of positive Casper reviews and decreasing the visibility and/or eliminating the negative reviews and unfavorable comparative reviews thereby misrepresenting or causing the misrepresentation of the nature, characteristics and qualities of Casper's mattresses and also of Ghostbed's mattresses and the unlawful effects of that conduct constitutes false advertising in violation of Section 43(a)(1) of the Lanham Act.

79.     Upon information and belief, Casper also arranged, coerced or paid for more favorable Casper mattress reviews and more favorable comparisons to Ghostbed's mattresses review.

80.     Casper's use of these devices deceived consumers or had the capacity to deceive consumers and had a material effect on consumer purchasing decisions.

81.     The products misrepresented through Casper's use of these devices affected interstate commerce.

82.     Defendants, in committing the foregoing acts, have damaged, and will continue to damage, GhostBed and Nature's Sleep financially and have harmed their reputation and goodwill.   Defendants have been and will continue to be unjustly enriched at the expense of GhostBed and Nature's Sleep who have no adequate remedy at law to completely redress such acts, and will be irreparably damaged unless Defendants are enjoined from committing and continuing to commit such acts.

## COUNT IV
### CONTRIBUTORY FEDERAL UNFAIR COMPETITION

83.     Plaintiffs incorporate by reference paragraphs 1 through 55 as though fully set forth herein.

84.     As set out above, Casper directly engaged in false designations of origin and false or misleading descriptions or representations of fact on or in connection with Casper's goods.

85.     Red Antler utilized the BETTER SLEEP FOR BRIGHTER DAYS mark in its own advertisements, as well as assisted Casper in utilizing the same.

86.     Upon information and belief, Red Antler was aware that the slogan mark BETTER SLEEP FOR BRIGHTER DAYS was in use and protected under common law and nevertheless induced Casper to infringe by using that slogan mark.

87.     Upon information and belief, Red Antler intended to assist and assisted Casper in Casper's infringement of the BETTER SLEEP FOR BRIGHTER DAYS slogan mark.

88.     ICS utilized the NATURE'S SLEEP marks in its own domain name, as well as assisted Casper in utilizing the same.

89.     Plaintiffs anticipate that discovery will reveal that ICS was aware that the NATURE'S SLEEP marks were in use and protected under federal law and nevertheless induced Casper to infringe by using that slogan mark.

90.     Plaintiffs anticipate that discovery will reveal that ICS intended to assist and assisted Casper in Casper's deception utilizing the NATURE'S SLEEP marks.

91.     Red Antler and ICS, in committing the foregoing acts, have damaged—and will continue to damage—GhostBed and Nature's Sleep and their reputation and goodwill.  Red Antler and ICS have been and will continue to be unjustly enriched at the expense of GhostBed and Nature's Sleep who have no adequate remedy at law to completely redress such acts, and will be irreparably damaged unless Red Antler and ICS are enjoined from committing and continuing to commit such acts.

## COUNT V
### CYBERSQUATTING

92.     Plaintiffs incorporate by reference paragraphs 1 through 55 as though fully set forth herein.

93.     Defendants Casper and ICS established and used the Cybersquatted Domain Name with the bad-faith intent to profit from Nature's Sleep's Marks, which are protected as distinctive marks under Section 3002(a) of the Anticybersquatting Act, 15 U.S.C. § 1125(d)(1).

94.     Casper and ICS registered or had registered in their behalf and used the Cybersquatted Domain Name without the prior knowledge, permission, or consent of Nature's Sleep.

95.     Casper and ICS used the Cybersquatted Domain Name to sell goods in a way that is likely to cause confusion with Nature's Sleep's goods sold under the Marks.

96.     The fact that the Cybersquatted Domain Name was registered under a false or proxy registrant name is evidence of bad faith intent under 15 U.S.C. § 1125 (d)(1)(B)(i).

## COUNT VI
### FLORIDA COMMON LAW TRADEMARK INFRINGEMENT

97.     Plaintiffs incorporate by reference paragraphs 1 through 55 as though fully set forth herein.

98.     Defendants' actions constitute common law trademark infringement.

99.     Defendants, in committing the foregoing acts, have damaged—and will continue to damage—GhostBed and Nature's Sleep and their reputation and goodwill.  Defendants have been and will continue to be unjustly enriched at the expense of GhostBed and Nature's Sleep who have no adequate remedy at law to completely redress such acts, and will be irreparably damaged unless Defendants are enjoined from committing and continuing to commit such acts.

## COUNT VII
### FLORIDA COMMON LAW CONTRIBUTORY TRADEMARK INFRINGEMENT

100.     Plaintiffs incorporate by reference paragraphs 1 through 55 as though fully set forth herein.

101.     Casper's actions constitute common law trademark infringement as set forth above.

102.     Upon information and belief, Red Antler was aware that the BETTER SLEEP FOR BRIGHTER DAYS slogan mark was in use and protected under federal law and nevertheless induced Casper to infringe by using that mark.

103.     Upon information and belief, Red Antler intended to assist Casper in Casper's infringement of the BETTER SLEEP FOR BRIGHTER DAYS slogan mark.

104.     Plaintiffs anticipate that discovery will reveal that ICS was aware that the NATURE'S SLEEP marks were in use and protected under federal law and nevertheless induced Casper to infringe by using that mark.

105.     Plaintiffs anticipate that discovery will reveal that ICS intended to assist Casper in Casper's infringement of the NATURE'S SLEEP marks.

106.     Red Antler and ICS, in committing the foregoing acts, have damaged—and will continue to damage—GhostBed and Nature's Sleep and their reputation and goodwill.   Red Antler and ICS have been and will continue to be unjustly enriched at the expense of GhostBed and Nature's Sleep who have no adequate remedy at law to completely redress such acts, and will be irreparably damaged unless Red Antler and ICS are enjoined from committing and continuing to commit such acts.

## COUNT VIII
### FLORIDA COMMON LAW UNFAIR COMPETITION

107.     Plaintiffs incorporate by reference paragraphs 1 through 55 as though fully set forth herein.

108.     Defendants' conduct as set out above tend to falsely represent Casper's goods as being affiliated with, connected to, associated with, or sponsored or approved by GhostBed and Nature's Sleep.   In addition, Defendants' acts are unfair competition because they are false advertising as discussed above.

109.     Defendants' conduct constitutes unfair competition with GhostBed and Nature's Sleep, and result in Defendants' unjust enrichment under the common law of Florida.

110.     Defendants, in committing the foregoing acts, have damaged—and will continue to damage—GhostBed and Nature's Sleep and their reputation and goodwill.  Defendants have

been and will continue to be unjustly enriched at the expense of GhostBed and Nature's Sleep who have no adequate remedy at law to completely redress such acts, and will be irreparably damaged unless Defendants are enjoined from committing and continuing to commit such acts.

## COUNT IX
### FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

111.   Plaintiffs incorporate by reference paragraphs 1 through 55 as though fully set forth herein.

112.   Defendants' conduct in utilizing the Marks constitutes unfair competition under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") codified at Section 501.201, *et seq.*, Florida Statutes.

113.   Defendants' conduct in trading on the good will of and misappropriating the Marks constitutes unfair competition under FDUTPA.

114.   Defendants' use of the Marks in connection with the sale of Casper's goods has caused, and will further cause, a likelihood of confusion, mistake, and deception as to the source of origin of Casper's goods, and the relationship between GhostBed and Nature's Sleep and Defendants.  Thus, Defendants have also engaged in unfair competition with GhostBed and Nature's Sleep in violation of FDUTPA by selling and/or offering, and promoting their products with the intention of trading upon the goodwill established by GhostBed and Nature's Sleep and are thereby misappropriating the benefits of substantial effort and money expended by GhostBed and Nature's Sleep in establishing its rights in and to the Marks.

115.   In addition, upon information and belief, Defendants have made false and misleading statements and caused others to make false and misleading statements about Casper's goods and about GhostBed's and  Nature's Sleep's goods; specifically Casper has posted

positive reviews and pays others to have positive reviews of Casper's goods completed through internet advertisers.  In addition, Casper strong-armed reviewers who appeared independent into posting positive reviews of Casper's goods and into posting reviews of Casper products more favorably than GhostBed and Nature's Sleep even those they do not actually rate higher.

116.    Defendants' actions were done in bad faith; they were intentional, malicious, and willful; and Defendants' actions have caused substantial harm to GhostBed and Nature's Sleep.

## COUNT X
### DECLARATORY JUDGMENT

117.    Plaintiffs incorporate by reference paragraphs 1 through 55 as though fully set forth herein.

118.    Defendant Casper has alleged that GhostBed and Nature's Sleep have infringed Casper's trademark, U.S. Reg. No. 4,762,027, by engaging in comparative advertising.  Thus, there exists a real and actual controversy.

119.    Such accused advertising includes utilizing Twitter, Casper's Twitter handle (@Casper), and hashtags to compare Casper's and Plaintiffs' products.  A hashtag is a word preceded by the pound sign (#) that allows social media sites such as Twitter to group postings together and to develop lists of what is "trending."  A Twitter handle is an individual account preceded by the at sign (@), which allows users to interact with one another in a way which links the tweets.

120.    None of these postings or similar postings are false or constitute trademark infringement or unfair competition under federal trademark law and none constitutes any violation of any state law.

121. In addition, such advertising is protected by the First Amendment as commercial speech.

122. GhostBed and Nature's Sleep are entitled to a declaratory judgment that they have neither infringed nor are infringing the CASPER mark nor violating any of Casper's rights.

### DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all triable issues.

### PRAYER FOR RELIEF

Wherefore, Plaintiffs, GhostBed and Nature's Sleep, respectfully request that this Court enter final judgment and preliminary and permanent injunctive relief in favor of Plaintiffs and against Defendants as follows:

a)    awarding Plaintiffs their damages and Defendants' profits, including their compensatory, consequential, statutory, and special damages including, without limitation, its lost profits, Defendants' profits, loss of goodwill and damage to its reputation, as well as exemplary damages, together with pre- and post-judgment interest, as provided by law, including, but not limited to, treble damages and increased profits;

b)    awarding Plaintiffs their reasonable attorneys' fees and costs associated with this action;

c)    granting preliminary and permanent injunctive relief in favor of Plaintiffs and against Defendants, enjoining Defendants from engaging in the unlawful practices described in this complaint;

d)    declaring that Plaintiffs have not violated any rights of Defendants;

e)    granting such further relief as this Court deems just and proper.

**Carlton Fields P.A.**
Suite 4200 - 100 Southeast Second Street - Miami - Florida 33131-9101 - (305) 530-0050

112664439.6

Dated:  September 27, 2017

Respectfully submitted,

/s/  Angela T. Puentes-Leon
Angela T. Puentes-Leon (FBN 0524621)
Apuentes-leon@carltonfields.com
Alan M. Grunspan (FBN 451150)
agrunspan@carltonfields.com
**CARLTON FIELDS JORDEN BURT, P.A.**
Miami Tower – 100 SE Second St., Suite 4200
Miami, Florida  33131
Tel:     305.530.0050
Fax:     305.530.0055

Ethan Horwitz (admitted *pro hac vice*)
ehorwitz@carltonfields.com
**CARLTON FIELDS JORDEN BURT, P.A.**
405 Lexington Avenue, 36th Floor
New York, NY 10174-0002
Tel:     212.380.9617
Fax:     212.785.5203

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

WE HEREBY CERTIFY that the foregoing document was electronically filed on this 27th day of September, 2017 with the Clerk of the Court using CM/ECF and is being served on the following counsel of record via Notices of Electronic Filing generated by CM/ECF to:

**Steven Ira Peretz**
**Michael B. Chesal**
**Moish Peltz**
**Alberto Alvarez**
Peretz Chesal & Herrmann PL
2 South Biscayne Blvd.
Suite 3700
Miami, FL 33131
305-341-3000
Email: speretz@pch-iplaw.com
          mchesal@pch-iplaw.com
          mpeltz@pch-iplaw.com
          aalvarez@pch-iplaw.com

*Counsel for Defendant Casper Sleep, Inc.*

**Andrew Kemp-Gerstel**
**Jana M. Montiel**
**Peter James Maskow**
Liebler Gonzalez & Portuondo PA
44 W. Flagler Street
25th Floor
Miami, FL 33130
305-379-0400
Email: akg@lgplaw.com
          jmm@lgplaw.com
          pjm@lgplaw.com

*Counsel for Defendant Red Antler, LLC*

/s/ Angela T. Puentes-Leon

112664439.6