## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No: 0:15-cv-62571

GHOSTBED, INC. and WERNER MEDIA
PARTNERS, LLC D/B/A NATURE'S SLEEP,
LLC,

      Plaintiffs,

v.

CASPER SLEEP, INC.;
RED ANTLER, LLC; and ICS INC.,

      Defendants.

_____/

CASPER SLEEP, INC.

      Counterclaim-Plaintiff,

v.

GHOSTBED, INC. and WERNER MEDIA
PARTNERS, LLC D/B/A NATURE'S SLEEP,
LLC,

      Counterclaim-Defendants.

_____/

## CASPER SLEEP'S ANSWER,
## AFFIRMATIVE DEFENSES TO PLAINTIFFS' SECOND AMENDED COMPLAINT
## AND AMENDED COUNTERCLAIMS

Defendant, Casper Sleep, Inc. ("**Casper**"), files its Answer and Affirmative Defenses to

the Second Amended Complaint [DE 157] filed by Plaintiffs GhostBed, Inc. ("**GhostBed**") and

Werner Media Partners, LLC d/b/a Nature's Sleep LLC ("**Nature's Sleep**"), and in response to

each numbered paragraph thereof, states:

**INTRODUCTION**

1.      Casper admits that this is an action for damages and injunctive relief but denies the remaining allegations in Paragraph 1.

2.      Denied.

**THE PARTIES**

3.      Casper lacks knowledge of information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 3 and therefore denies same.

4.      Casper lacks knowledge of information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 4 and therefore denies same.

5.      Admitted.

6.      Casper admits that it is a client of Red Antler. Casper lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of Paragraph 6.

7.      Casper lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegation that ICS is a Cayman Islands corporation with a principal place of business in Grand Cayman that is engaged in the business of registering domain names and therefore denies same.  The remaining allegations in Paragraph 7 are denied.

**JURISDICTION AND VENUE**

8.      Casper admits that subject matter jurisdiction is proper in this Court.

9.      Denied.

10.      Denied.

11.      Denied.

2

12.     Casper lacks knowledge of information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 12 and therefore denies same.

13.     Casper lacks knowledge of information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 13 and therefore denies same.

14.     Casper lacks knowledge of information sufficient to form a belief as to the truth or falsity of the allegation that ICS is subject to the personal jurisdiction of this Court and therefore denies same. Casper denies that ICS registered the domain name at the direction of Casper in an attempt to redirect business from Nature's Sleep to Casper.

15.     Casper lacks knowledge of information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 15 and therefore denies same.

16.     Casper does not dispute that venue is proper in this Court. The remaining allegations in Paragraph 16 are denied.

## FACTUAL BACKGROUND

17.     Casper lacks knowledge of information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 17 and therefore denies same.

18.     Casper lacks knowledge of information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 18 and therefore denies same.

19.     Casper lacks knowledge of information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 19 and therefore denies same.

20.     Casper lacks knowledge of information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 20 and therefore denies same.

21.     Casper lacks knowledge of information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 21 and therefore denies same.

22.     Denied.

23.     Casper lacks knowledge of information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 23 and therefore denies same.

24.     Casper lacks knowledge of information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 24 and therefore denies same.

25.     Casper lacks knowledge of information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 25 and therefore denies same.

26.     Casper lacks knowledge of information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 26 and therefore denies same.

27.     Casper lacks knowledge of information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 27 and therefore denies same.

28.     Casper lacks knowledge of information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 28 and therefore denies same.

29.     Casper admits that the websites known as Sleepopolis, Mattress Nerd and Sleep Sherpa contained links to the websites of mattress manufacturers. Casper lacks knowledge of information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 29 and therefore denies same.

30.     Admitted.

31.     Casper admits that Krim is one of the founders of Casper and is its Chief Executive Officer and that Krim has had prior businesses in the mattress industry. Casper admits that Krim was one of operators of Sleep Better Store, LLC, dreamnumber.com, and Angel Bed LLC. The remaining allegations in Paragraph 31 are denied.

32.     Casper admits that prior businesses to which Krim was affiliated have been involved in litigation involving patents and trademarks.  The remaining allegations in Paragraph 32 are denied.

33.     Denied.

34.     Admitted.

## ALLEGATIONS

35.     Casper lacks knowledge of information sufficient to form a belief as to the truth or falsity of the allegation that ICS registered the domain name. The remaining allegation in Paragraph 35 are denied.

36.     Denied.

37.     Denied.

38.     Casper admits that it used Google Adwords to display the referenced Casper sponsored advertisement, clearly labeled as an advertisement, to some users searching Google for the term "ghostbed". Casper also admits that consumers may make a false association between Casper and GhostBed as a result of the association with the famous "Casper the Friendly Ghost." Casper lacks knowledge of information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 38 and therefore denies same.

39.     Denied.

40.     Denied.

41.     Casper admits that GhostBed and Casper sell competing products to similar customers in similar channels of trade. Casper lacks knowledge of information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 41 and therefore denies same.

42.     Denied.

43.     Denied.

44.     Denied.

45.     Casper admits that it filed lawsuits against the owners of the websites, Sleepopolis.com, MattressNerd.com and SleepSherpa.com, and that the lawsuits were settled. Casper denies the remaining allegations of Paragraph 45.

46.     Denied.

47.     Denied.

48.     Casper denies that the accused conduct gives a false impression to consumers about Casper's mattresses. Casper lacks knowledge of information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 48 and therefore denies same.

49.     Casper lacks knowledge of information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 49 and therefore denies same.

50.     Casper lacks knowledge of information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 50 and therefore denies same.

51.     Casper lacks knowledge of information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 51 and therefore denies same.

52.     Denied.

53.     Casper admits that it used Google Adwords to display the referenced Casper sponsored advertisement, clearly labeled as an advertisement, to some users searching Google for the term "ghostbed". Casper denies that the advertisement falsely represents GhostBed as a copycat.

54.     Denied.

55.     Denied.

## COUNT I
### (Federal Trademark Infringement)

56.     Casper repeats its responses to paragraphs 1-55.

57.     Casper lacks knowledge of information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 57 and therefore denies same.

58.     Casper admits that GhostBed and Nature's Sleep have no connection with Casper and have not granted any license or consent to Casper to use Nature's Sleep's marks, but denies that such marks are distinctive and famous.

59.     Denied.

60.     Denied.

61.     Denied.

62.     Denied.

63.     Denied.

## COUNT II
### (Contributory Federal Trademark Infringement)

64.     Casper repeats its responses to paragraphs 1-55.

65.     Casper lacks knowledge of information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 65 and therefore denies same.

66.     Casper lacks knowledge of information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 66 and therefore denies same.

67.     Denied.

68.     Denied.

69.     Denied.

70.     Denied.

## COUNT III
### (Federal Unfair Competition)

71.     Casper repeats its responses to paragraphs 1-55.

72.     Casper repeats its responses to paragraphs 1-71.

73.     Denied.

74.     Denied.

75.     Denied.

76.     Denied.

77.     Denied.

78.     Denied.

79.     Denied.

80.     Denied.

81.     Denied.

82.     Denied.

## COUNT IV
### (Contributory Federal Unfair Competition)

83.     Casper repeats its responses to paragraphs 1-55.

84.     Denied.

85.     Casper lacks knowledge of information sufficient to form a belief as to the truth or falsity of whether Red Antler utilized the slogan in its own advertisements and therefore denies same. The remaining allegations in Paragraph 85 are denied.

86.     Denied.

87.     Denied.

8

88.     Casper lacks knowledge of information sufficient to form a belief as to the truth or falsity of the allegation that ICS utilized the NATURE'S SLEEP marks in its own domain name and therefore denies same.  The remaining allegations in Paragraph 88 are denied.

89.     Denied.

90.     Denied.

91.     Denied.

**COUNT V**
**(Cybersquatting)**

92.     Casper repeats its responses to paragraphs 1-55.

93.     Denied.

94.     Denied.

95.     Denied.

96.     Denied.

**COUNT VI**
**(Florida Common Law Trademark Infringement)**

97.     Casper repeats its responses to paragraphs 1-55.

98.     Denied.

99.     Denied.

**COUNT VII**
**(Florida Common Law Contributory Trademark Infringement)**

100.    Casper repeats its responses to paragraphs 1-55.

101.    Denied.

102.    Denied.

103.    Denied.

104.    Denied.

105.    Denied.

106.    Denied.

## COUNT VIII
### (Florida Common Law Unfair Competition)

107.    Casper repeats its responses to paragraphs 1-55.

108.    Denied.

109.    Denied.

110.    Denied.

## COUNT IX
### (Violation of FDUTPA)

111.    Casper repeats its responses to paragraphs 1-55.

112.    Denied.

113.    Denied.

114.    Denied.

115.    Denied.

116.    Denied.

## COUNT X
### (Declaratory Judgment)

117.    Casper repeats its responses to paragraphs 1-55.

118.    Casper admits that it alleges that GhostBed and Nature's Sleep have infringed Casper's registered CASPER trademark, but denies that the infringement was based solely on comparative advertising.

119.    Casper admits the allegations in Paragraph 119 but denies that GhostBed's and Nature's Sleep's infringing activities are limited to such allegations.

120.    Denied.

121.    Denied.

122.    Denied.

## DEFENSE NO. 1
### (Failure to state a claim)

To the extent the Second Amended Complaint alleges infringement of the GHOSTBED mark by Casper's purchase of the term "ghostbed" as a Google Adword, the Second Amended Complaint fails to state a claim upon which relief may be granted.

## DEFENSE NO. 2
### (Failure to state a claim)

The Second Amended Complaint fails to state a claim upon which relief may be granted because it improperly comingling parties and causes of action.

## DEFENSE NO. 3
### (Failure to state a claim)

The Second Amended Complaint fails to state a claim upon which relief may be granted in Count III because Count III incorporates all prior allegations from all previous counts and is a shotgun pleading.

## DEFENSE NO. 4
### (Failure to state a claim)

To the extent Counts III, VIII and IX of the Second Amended Complaint are based upon Plaintiffs' allegations of false advertising and do not identify the "statements" that form the allegedly false advertisements, the Second Amended Complaint fails to state a claim upon which relief may be granted.

**DEFENSE NO. 5**
**(Failure to state a claim)**

To the extent Counts III, VIII and IX of the Second Amended Complaint are based upon Plaintiffs' allegations of false advertising in connection with search engine optimization, mattress reviews, mattress reviewers, or Casper's "Why Buy a Copycat" advertisement, the Second Amended Complaint fails to state a claim upon which relief may be granted.

**AFFIRMATIVE DEFENSE NO. 1**
**(Unclean Hands – Trademark Infringement)**

Nature's Sleep's trademark infringement and unfair competition claims against Casper based on Casper's adoption of the BETTER SLEEP FOR BRIGHTER DAYS mark is barred by the doctrine of unclean hands because (a) Nature's Sleep falsely associated such mark with its Couture Sleep product and deceived consumers by selling COUTURE SLEEP products but actually delivering non-COUTURE SLEEP products, (b) Nature's Sleep falsely asserted a date of first use in commerce of both the BETTER SLEEP FOR BRIGHTER DAYS mark and the COUTURE SLEEP mark prior to the date Casper first used the accused mark in commerce, and (c) Nature's Sleep submitted a false doctored specimen of the COUTURE SLEEP mark – purportedly showing actual use of the COUTURE SLEEP mark – in its application to federally register the COUTURE SLEEP mark.

**AFFIRMATIVE DEFENSE NO. 2**
**(Unclean Hands – False Advertising)**

Plaintiffs' false advertising, unfair competition, and FDUTPA claims against Casper are barred by the doctrine of unclean hands because Plaintiffs' engaged in false advertising as more fully set forth in Casper's Amended Counterclaims.

## COUNTERCLAIMS

Counterclaim Plaintiff, Casper Sleep, Inc. ("**Casper**"), by and through its undersigned attorneys hereby sues Counterclaim-Defendants, GhostBed, Inc. ("**GhostBed**") and Werner Media Partners, LLC d/b/a Nature's Sleep LLC ("**Nature's Sleep**") (GhostBed and Nature's Sleep are collectively referred to herein as "**Counter-Defendants**"), and states:

## INTRODUCTION

1.      This action arises from Counter-Defendants' willful infringement of Casper's registered CASPER® trademark (Counts I and II), Counter-Defendants' false association and false designation of origin under Section 43(a)(1)(A) of the Lanham Action (Count III), Counter-Defendants' false advertising under Section 43(a)(1)(B) of the Lanham Act (Count IV), common law unfair competition (Count V), and Counter-Defendants' violation of the Florida Deceptive and Unfair Trade Practices Act (Count VI).

## THE PARTIES

2.      Casper is a Delaware corporation, having its principal place of business in New York, New York.

3.      Upon information and belief, GhostBed is a Delaware corporation with its principal place of business in Broward County, Florida.

4.      Upon information and belief, Nature's Sleep is an Illinois limited liability company with its principal place of business in Broward County, Florida.

5.      Nature's Sleep controlled or had the right and ability to control the acts of GhostBed identified herein and is vicariously and/or contributorily liable for such acts.

13

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. §§ 1114, 1116, 1118, 1121 and 1125, 28 U.S.C. § 1331 and 28 U.S.C. § 1338 because this case involves a federal question arising under the Lanham Act, 15 U.S.C. §§ 1051, et seq.  This Court also has supplemental jurisdiction under 28 U.S.C. § 1367 because the state law claims are so related to the Lanham Act claims that they form part of the same case or controversy.

7.      Counter-Defendants are subject to the personal jurisdiction of this Court and venue is proper in this District because Counter-Defendants have subjected themselves to this Court's jurisdiction by commencing this action.  Counter-Defendants are also subject to the personal jurisdiction of this Court and venue is proper in this District pursuant to 28 U.S.C. § 1391 and § 48.193, Fla. Stat. because Counter-Defendants operate, conduct, engage in, or carry on a business or business venture in this state or otherwise have an office or agency in this state, and because the Counter-Defendants committed the tortious acts described herein in this State.

## FACTS

### A.      CASPER'S REMARKABLE START-UP SUCCESS

8.      In April 2014, Casper launched as an innovative new sleep start-up, radically disrupting the traditional mattress industry with one perfect foam mattress model sold directly to consumers online with a risk free in-home trial—eliminating mattress stores and their inflated prices. Casper's unique approach sought to create a universally comfortable product with a sleek design delivered straight to one's door without the need for commission-driven salespeople working in retail stores.  Instead, Casper offers its mattresses directly to consumers via its e-commerce website. Casper immediately struck a chord with consumers and quickly developed a cult-like following, generating $1 million in sales within its first month.

9.      Casper's award-winning and patent-pending mattress design was the result of significant research and development.  In creating "one perfect mattress" for consumers, Casper tested more than 100 support foam samples, created more than 100 prototypes and conducted more than 3,200 hours of rigorous product testing.  Collectively, Casper's best-in-class product design team has won numerous awards and holds more than 50 patents.

10.      Casper single-handedly created an entirely new category of mattress retailers — and other on-line mattress retailers quickly entered the market with similar mattress designs and business models.  In 2015, Casper's first full calendar year of operations, the company generated revenues in excess of $100 million, becoming one of the fastest growing consumer brands of all time.

11.      In addition to offering an exceptional consumer experience and critically acclaimed products, Casper's award-winning innovative use of social media established Casper as a unique contrast to traditional mattress companies.  As described by Market Watch, Casper implemented a "fun, tailored social-media strategy that includes posts of sleep-related articles, responding directly to customers . . . and highlighting the appearances of its mattresses in shows like 'the Real World.'"  Indeed, real Casper team members engage directly with customers and the public at large on social media platforms like Twitter and Facebook.  As a result, Casper's unique brand voice and social media presence has gone viral, resonating with consumers of all demographics.

12.      Casper's innovative product, revolutionary sales model, and spectacular growth attracted national media coverage and acclaim.  TIME Magazine featured Casper mattresses as one of the top 25 inventions of 2015, and both the company and its product have garnered positive press in a host of other print and online publications as well as in various television shows,

including the New York Times, Wall Street Journal, USA Today, Fareed Zakaria GPS on CNN, and CBS This Morning.

13.     Indeed, Casper's success has spawned numerous imitators like GhostBed that have tried to copy Casper's innovative approach without investing in any of the innovations pioneered by Casper.

14.     To protect its valuable trademark rights, Casper applied for and obtained, inter alia, the following United States Trademark Registrations for the CASPER mark:

| U.S. Reg. No. | Goods/Services | Constructive Use Filing Date |
|---|---|---|
| 4,762,027 | mattresses; mattress toppers; retail store services featuring mattresses and mattress toppers | Mar. 27, 2014 |
| 4,961,680 | pillows; retail store services featuring pillows | Mar. 27, 2014 |
| 5,097,355 | mattress foundations; box springs; retail store services featuring mattress foundations and box springs | Mar. 27, 2014 |
| 5,053,896 | bed sheets, fitted bed sheet covers, bed flat sheets, duvet covers and pillow cases used in the bedding; online retail store services featuring bed sheets, fitted bed sheet covers, bed flat sheets, duvet covers and pillow cases used in the bedding | Feb. 22, 2016 |

(collectively, the "**CASPER Registrations**").

15.     The CASPER mark represents one of Casper's most valuable and important corporate assets.

**B.     COUNTER-DEFENDANTS' INFRINGING AND DECEPTIVE ACTIVITIES**

**a.   Adoption of the Infringing GHOSTBED mark**

16.     Nature's Sleep had been engaged in the traditional mattress business through conventional brick-and-mortar retail outlets for more than 15 years prior to Casper entering the market in April 2014.

17.     But Casper's rapid growth and success, and its corresponding threat to Nature's Sleep's traditional show-room mattress business, soon prompted Nature's Sleep's owner to execute a dramatic about-face and launch a new company in November 2015 — over a year and a half after Casper's launch in April 2014.

18.     In a striking departure from Nature's Sleep's brick-and-mortar business model and traditional product type, this new company—Counter-Defendant GhostBed—slavishly imitated Casper's on-line business model and innovative product type.  GhostBed, like Casper, offered a compressed mattress in a small box which enabled a consumer to skip the showroom altogether and find a mattress without ever leaving home.

19.     Further imitating Casper, GhostBed copied Casper's chambray two-tone mattress design (both mattresses are pictured below), and offered a 101-night free trial period (playing off of Casper's 100-night free trial period), pillows and a mattress foundation.  GhostBed also copied notable aspects of Casper's successful social media campaign.



| CASPER | GHOSTBED |
|---|---|

20.     Long before GhostBed's commencement of business, various Casper media reviewers and Casper customers made playful word associations in on-line comments and reviews between the CASPER name and the "Casper the Friendly Ghost" cartoon character (even though Casper itself never promoted this association), such as the following:

- "**Casper: A Friendly Mattress** Startup Worth Millions." http://www.slate.com/blogs/moneybox/2014/08/07/foam_mattress_startup_casper _has_one_density_option_and_delivers_in_a_box.html.

- "**My friends are calling it [the Casper mattress] the friendly ghost bed**, and I wouldn't necessarily disagree with that moniker." https://casper.com/mattresses/reviews.

- "Casper's worth the money. . . .feels a lot **like cuddling up to a friendly ghost**." http://thenextweb.com/insider/2014/06/05/2-weeks-casper-mattress-bedtime-never-felt-good/#gref.

- "**Casper The Friendly Mattress**. . . . Every Hip Daddy likes a **friendly ghost (i.e Casper)**…obviously.  But how about a mattress?" http://hipdaddy.com/casper-the-friendly-mattress/.

- "**Casper is the friendly mattress** that arrives in a box." http://www.cultofmac.com/308270/casper-friendly-mattress-arrives-box/.

21.   As such, Nature's Sleep's adoption of the name GHOSTBED, along with the graphic image of a ghost and the slogan "From the Friendly Mattress People" – was hardly the result of happenstance:



Ghost Mattress - From the Friendly Mattress People
Ad www.ghostbed.com/ ▾
12-Mos at 0% Financing & Ships Free
Wake Up to a New You · Luxury, Meet Value. · Losing Sleep? Find Relief
⊚ 7143 W Broward Blvd - (877) 557-5337 - Open today · 10:00 AM – 6:00 PM ·
GhostBed Reviews                                        The Design
Shop Now

22.   Instead, Nature's Sleep and GhostBed deliberately adopted GHOSTBED as the company name and trademark along with the image of a ghost and the slogan "From the Friendly Mattress People" to call to mind the cartoon character, "Casper the Friendly Ghost," thereby creating confusion and a false association with Casper's well-known CASPER mark, causing consumers to erroneously conclude that Counter-Defendants' GHOSTBED products originate from the same source as CASPER products or that the companies are somehow affiliated or associated with one another.

23.   In fact, in paragraph 38 of their own Second Amended Complaint, Nature's Sleep and GhostBed effectively acknowledge that their use of the GHOSTBED mark causes consumer

confusion because of this association: "[B]ecause of the famous CASPER THE FRIENDLY GHOST, consumers did not properly remember the mattress name they were looking for." Second Amended Complaint at ¶38.

24.     Because Nature's Sleep adopted and is the owner of the GHOSTBED mark and has licensed the mark exclusively to GhostBed, its wholly-owned subsidiary, Nature's Sleep and GhostBed are jointly and severally liable for any infringement or misuse arising from or relating to the use of the GHOSTBED mark.

**b.   GhostBed's Infringing use of the CASPER mark**

25.     Obviously intending to exploit the likely confusion between Counter-Defendants' use of the GHOSTBED mark on the one hand, and Casper's use of the CASPER mark on the other, GhostBed uses Twitter and other forms of social media to associate the two marks, causing further confusion.   For example, GhostBed has used its @theghostbed Twitter account to tweet the #Casper hashtag directly next to the #GhostBed hashtag, even where the tweet has nothing to do with Casper and does not offer any information or product comparison to avoid confusion as to the association, sponsorship, or connection between #Casper and #GhostBed or the source or origin of the respective products.   An example is shown below.





26.     Thus, consumers searching Twitter for #Casper or #GhostBed are even more likely to believe that these two brands are related or that their products originate from the same source.

### c.   Harassing Casper Customers and Prospective Customers

27.     GhostBed has also used social media to regularly harass Casper customers who post positive online comments about CASPER mattresses.  For example, when a consumer shares something positive about Casper on Twitter and includes the #Casper hashtag or @Casper username, GhostBed frequently responds by Tweeting a message to that user challenging the quality of CASPER mattresses, and in the case of prospective purchasers, seeking to interfere with the prospective sale.  Examples of GhostBed's harassing communications are shown below.





**d. False Claims about Product Quality**

28.     GhostBed and Nature's Sleep also deceive consumers by prominently displaying the word "SUPER**NATURAL**" on their websites (as shown below), with the word "**NATURAL**" emphasized, to falsely suggest to consumers that GHOSTBED mattresses are made from all-natural fibers or materials.



21



**b. False "Pick Your Ghost Carefully" Advertisement And False Mattress Review Ratings**

29.    Counter-Defendants engaged in a Google Adwords campaign where consumers using the keyword search terms "Casper vs GhostBed" and "GhostBed vs Casper" would cause the search results to feature a sponsored Google Ad placed by Counter-Defendants cautioning consumers to "Pick Your Ghost Carefully":



[

30.    The Pick Your Ghost Carefully Ad falsely associated Casper with "Casper the Friendly Ghost" – an association never promoted by Casper.

31.     The Pick Your Ghost Carefully Ad contained a link to a page on Counter-Defendants' website www.ghostbed.com that purported to report "average" scores given by two third-party mattress reviewers for a Ghostbed mattress and a Casper mattress.   On this page, Counter-Defendants misleadingly mixed mattress review scores from two separate review sites and further misrepresented that Ghostbed received an average score of 9.2, while Casper received an average score of 8.3, as set forth below:



32.     The averages were calculated by misrepresenting the scoring categories used by the two third-party mattress reviewers in rating the GhostBed mattress and Casper mattress. In particular, Counter-Defendants displayed a chart that purported to list all of the scoring categories used by the reviewers in rating the GhostBed mattress and the Casper mattress:

|  | GHOSTBED | CASPER |
| --- | --- | --- |
| **9.2** GHOSTBED | **8.3** CASPER | |
| **CHART THAT BREAKS DOWN THE PROS AND CONS** Compiled as per Sleep Sherpa GhostBed and Casper reviews and Mattress Clarity GhostBed and Casper reviews | | |
| **I. PRICE** (MATTRESS CLARITY) | 10 | 8 |
| **II. MATERIALS/ DURABILITY** (MATTRESS CLARITY) | 9.2 | 7 |
| **III. COMFORT** (MATTRESS CLARITY) | 8.4 | 8 |
| **IV. WARRANTY** (MATTRESS CLARITY) | 9.6 | 9.4 |
| **V. TRIAL PERIOD** (SLEEP SHERPA FOR GHOSTBED) | 9 | 9 |

33.     In fact, Counter-Defendants selected or "cherry picked" only those scoring categories where GhostBed received the same or a higher rating than Casper, and excluded those

categories where Casper received a higher rating. Counter-Defendants included just four out of ten categories rated by one of the mattress reviewers cited and only one out of the five categories rated by the second reviewer.

34.     To further the deception, Counter-Defendants included false ratings for four out of the five categories included in the chart. While the ratings in Counter-Defendants' page were based on a one (1) to ten (10) scale, the underlying review cited for four out of the five categories actually used a one (1) to (5) scale. Thus, the average scores of 9.2 for GhostBed and 8.3 for Casper were incompatible with the scoring system used by the mattress reviewer.



35.     Moreover, Counter-Defendants misrepresented that the Ghostbed mattress received a score of 8.4 in the "comfort" category while Casper's mattress received a score of 8.0. As shown above, Casper's mattress was actually rated higher in the underlying review cited by Counter-Defendants.

36.     Consequently, Counter-Defendants' mattress review comparison was a sham: it falsely advertised (a) that a Ghostbed mattress ranked significantly higher than a Casper mattress overall and (b) that a Ghostbed mattress ranked the same or higher than a Casper mattress in every category rated by the mattress reviewers.

### c.   The False Advertisement About Casper's Mattress Foundation

37.     Counter-Defendants' website www.ghostbed.com promotes a page titled "GhostBed vs Casper Mattress Review" that falsely states "GhostBed also offers a matching foundation to purchase, which Casper does not."  Casper does sell a matching foundation for its mattress—thus, Counter-Defendants' statement is literally false.

### d.   The False Facebook Ad

38.     Counter-Defendants published a purported Google rating of a Ghostbed mattress in an ad appearing on Facebook:



39.     The Google rating of 4.99 was a complete fabrication manufactured out of whole cloth by Counter-Defendants.  This fake Google rating appeared on a page that enabled consumers to click a link to the GhostBed website where consumers could purchase a GhostBed mattress.

40.     Google never issued a 4.99 rating for a GhostBed mattress. Instead, Google actually issued a 4.9 rating for a Casper mattress. Counter-Defendants published the bogus Google rating for a GhostBed mattress in direct response to Google's truthful rating for a Casper mattress.

41.     Consequently, Counter-Defendants falsely represented that the GhostBed mattress had received a superior rating over Casper for the purpose of increasing the sales of the GhostBed mattress.

**e. The False Celebrity Endorsement Ad**

42.     Counter-Defendants published an ad on its Facebook page claiming that "GhostBed is a favorite amongst celebrities."   The ad placed a photograph of Jennifer Lopez, a world-famous celebrity, next to the ad copy:



[FEATURED IN THE NEWS] GhostBed is a favorite amongst celebrities! Click here to see why…See more





43.     Upon information and belief, however, Ms. Lopez never stated that GhostBed was the mattress she favored, or that she ever slept on a GhostBed mattress, or that she even knew a GhostBed mattress existed. The ad thus misrepresented that Ms. Lopez favored a GhostBed mattress or endorsed GhostBed mattresses.  Consequently, Counter-Defendants illegally used Ms. Lopez's likeness without her consent to promote GhostBed mattresses.

44.     This false endorsement appeared on a page that enabled consumer to click a link to the GhostBed website where consumers could purchase a GhostBed mattress.

26

45.     Consequently, Counter-Defendants falsely represented that the GhostBed mattress had received a product endorsement from a world-famous celebrity for the purpose of boosting their GhostBed product sales.

**f.   The False 15 Years in Business Claim**

46.     Although GhostBed has actually been in business for less than two years (starting in November 2015) Counter-Defendants blatantly deceive consumers by misrepresenting that GhostBed has been in business for 15 years (as shown below):



47.     By falsely claiming that GhostBed has been the "Industry Leader" for 15 years, Counter-Defendants sought to deceive the public into believing that GhostBed began business in 2001 – well before Casper began business in April 2014 – and thereby misrepresent that GhostBed had pre-dated Casper.

48.     Counter-Defendants used this creation myth to counter consumer accusations that GhostBed sought to falsely trade upon Casper's success. In particular, when consumers on social media called out GhostBed as a "Casper mattress rip off" or a "shameless copy of Casper,"

Counter-Defendants falsely retorted that GhostBed had been doing business for "15 years" or "since 2001":





49.     Counter-Defendants used these false statements to deceive consumers into believing that GhostBed had been in business long before Casper.

50.     As shown in the three examples above, these false statements about GhostBed being in business for 15 years (or since 2001) were frequently coupled with a link to the GhostBed website where consumers could purchase a GhostBed mattress.

51.     Consequently, Counter-Defendants falsely represented how long GhostBed had been in business for the purpose of increasing their GhostBed sales.

### g.  The False "Verified Purchaser" Reviewer

52.     Amazon publishes product reviews on its website for the products it offers for sale. To preserve the integrity of the reviewing process, Amazon enables only actual purchasers of the product to provide a review as a "Verified Purchaser" – thereby indicating that the reviewer is a genuine consumer of the product.

53.     Counter-Defendants sought to game the system and defeat the integrity of the review process by having a person give a "Verified Purchaser" review of a GhostBed mattress and Nature's Sleep mattress topper who was not a genuine purchaser.  In particular, Counter-Defendants gave a person, acting at the direction of Counter-Defendants, a one-time discount code to purchase a GhostBed mattress and Nature's Sleep mattress topper for a 99% discount.  This enabled the person to purchase a $500 mattress for just $5 and a $220 mattress topper for just over $2. The person then posted a favorable "Verified Purchaser" review for the GhostBed mattress and Nature's Sleep mattress topper.

54.     This false "Verified Purchaser" review appeared on the same Amazon webpage where consumers could also use a link to purchase a GhostBed mattress and Nature's Sleep mattress topper through Amazon.

55.     Consequently, Counter-Defendants falsely represented that the GhostBed mattress and Nature's Sleep mattress topper had received a favorable review from a genuine "Verified Purchaser" – rather than a shill for GhostBed and Nature's Sleep – for the purpose of increasing their GhostBed and Nature's Sleep sales. To the extent that the "Verified Purchaser" is not an agent of Counter-Defendants, the "Verified Purchaser" herself falsely represented that the GhostBed mattress and Nature's Sleep mattress topper had received a favorable review from a genuine "Verified Purchaser" and Counter-Defendants knowingly induced, caused, or materially

participated in the publication of the false and misleading statements, thereby making Counter-Defendants contributorily liable.

### h. GhostBed's Misleading and Deceptive Relationship with Ryan Monahan

56.     GhostBed has a significant business and financial relationship with Ryan Monahan ("**Monahan**").

57.     Monahan previously had a relationship with GhostBed where he published content on the internet on behalf of GhostBed, authored numerous blog posts on ghostbed.com, identified himself for a time as GhostBed's Chief Brand Officer, and used a GhostBed hosted email address (Ryan@ghostbed.com).

58.     Monahan is presently the owner of Honest Reviews, LLC through which he operates the mattress review and mattress industry news website honestmattressreviews.com and publishes reviews and articles about mattress companies and their products. Monahan also disseminates this content through social media.

59.     GhostBed has made significant undisclosed financial payments to Monahan either directly or indirectly whereby Monahan has reviewed GhostBed's products on honestmattressreviews.com more favorably than GhostBed's competitor's products, including Casper's products, and has further disseminated false or misleading statements about GhostBed's competitors' products, including Casper's products, both on the honestmattressreviews.com website and through social media.  Prior to September 2017, all such statements were made without disclosing the significant business and financial relationship between Monahan and GhostBed.

60.     Based on this business and financial relationship, Monahan has acted as an undisclosed agent or front for GhostBed, or has otherwise worked in concert with GhostBed, such that any false or misleading statements he has asserted against Casper are imputed to GhostBed.

61.     The false and misleading statements that Monahan has asserted against Casper include, inter alia, insinuating that Casper has engaged in or supported animal abuse practices in sourcing materials used for its mattress-related products (which appeared on the honestmattressreviews.com on May 25, 2017).

62.     Such assertions by Monahan, are falsely and misleadingly presented to the public as being made by an independent party, cause injury to Casper's reputation.

**COUNT I**
**INFRINGEMENT OF FEDERALLY REGISTERED MARK**
**THROUGH THE ADOPTION AND USE OF GHOSTBED**
**(15 U.S.C. § 1114)**

63.     Casper incorporates by reference Paragraphs 1 through 62 above as if fully set forth herein.

64.     Casper owns the Casper Registrations and has continuously used the CASPER mark to identify its mattresses, mattress toppers and retail store services featuring mattresses and mattresses toppers since 2014; its pillows and retail store services featuring pillows since 2015; its bed sheets, fitted bed sheet covers, bed flat sheets, duvet covers and pillow cases and online retail store services featuring bed sheets, fitted bed sheet covers, bed flat sheets, duvet covers and pillow cases since 2015; and its mattress foundations, box springs and retail store services featuring mattress foundations and box springs since 2016.

65.     The CASPER mark is inherently distinctive, has achieved a high degree of consumer recognition, and serves to identify Casper as the source of the goods and services associated with the CASPER mark.

66.     As more particularly described in Paragraphs 16 through 24 and 29 through 30 above, Nature's Sleep's and GhostBed's use of the mark GHOSTBED is likely to cause confusion,

31

or to cause mistake, or to deceive as to the affiliation, connection, or association of Nature's Sleep and GhostBed with Casper, or as to the origin, sponsorship or approval of Nature's Sleep's and GhostBed's goods and services.

67.     Nature's Sleep's and GhostBed's use of the GHOSTBED mark is without Casper's permission or authority and has been with full knowledge of Casper's rights.

68.     Nature's Sleep's and GhostBed's conduct as described above constitutes infringement of Casper's federally registered CASPER mark in violation of Section 32 of the Lanham Act, 15 § U.S.C. 1114.

69.     Nature's Sleep's and GhostBed's intentional adoption of a confusingly similar name and mark and acts of infringement as described above have caused and are causing great and irreparable injury and damage to Casper, including with respect to its trademark rights, business, goodwill and reputation and, unless restrained, will cause further irreparable injury and damage, leaving Casper with no adequate remedy at law.

**COUNT II**
**INFRINGEMENT OF FEDERALLY REGISTERED MARK**
**THROUGH THE UNAUTHORIZED USE OF CASPER**
**(15 U.S.C. § 1114)**

70.     Casper incorporates by reference Paragraphs 1 through 62 above as if fully set forth herein.

71.     Casper owns the Casper Registrations and has continuously used the CASPER mark to identify its mattresses, mattress toppers and retail store services featuring mattresses and mattresses toppers since 2014; its pillows and retail store services featuring pillows since 2015; its bed sheets, fitted bed sheet covers, bed flat sheets, duvet covers and pillow cases and online retail store services featuring bed sheets, fitted bed sheet covers, bed flat sheets, duvet covers and pillow

cases since 2015; and its mattress foundations, box springs and retail store services featuring mattress foundations and box springs since 2016.

72.     The CASPER mark is inherently distinctive, has achieved a high degree of consumer recognition, and serves to identify Casper as the source of the goods and services associated with the CASPER mark.

73.     GhostBed's use of the CASPER mark as more fully described in Paragraphs 25 through 26 and 29 through 30 above is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of GhostBed with Casper, or as to the origin, sponsorship or approval of GhostBed's goods and services.

74.     GhostBed's use of the CASPER mark is without Casper's permission or authority and has been with full knowledge of Casper's rights.

75.     GhostBed's conduct as described above constitutes infringement of Casper's federally registered CASPER mark in violation of Section 32 of the Lanham Act, 15 § U.S.C. 1114.

76.     GhostBed's intentional use of an identical mark and acts of infringement have caused and are causing great and irreparable injury and damage to Casper, including with respect to its trademark rights, business, goodwill and reputation and, unless restrained, will cause further irreparable injury and damage, leaving Casper with no adequate remedy at law.

**COUNT III**
**FEDERAL FALSE ASSOCIATION AND FALSE DESIGNATION OF ORIGIN**
**(15 U.S.C. § 1125(a)(1)(A))**

77.     Casper incorporates by reference Paragraphs 1 through 62 above as if fully set forth herein.

78.     Casper has continuously used the CASPER mark to identify its mattresses, mattress toppers and retail store services featuring mattresses and mattresses toppers since 2014; its pillows and retail store services featuring pillows since 2015; its bed sheets, fitted bed sheet covers, bed flat sheets, duvet covers and pillow cases and online retail store services featuring bed sheets, fitted bed sheet covers, bed flat sheets, duvet covers and pillow cases since 2015; and its mattress foundations, box springs and retail store services featuring mattress foundations and box springs since 2016.

79.     The CASPER mark is inherently distinctive, has achieved a high degree of consumer recognition, and serves to identify Casper as the source of the goods and services associated with this mark.

80.     Counter-Defendants' use of the GHOSTBED mark and GhostBed's use of the CASPER mark, as more particularly described in paragraphs 16-26 and 29 through 30 above, are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Nature's Sleep and GhostBed with Casper, or as to the origin, sponsorship or approval of Nature's Sleep's and GhostBed's goods and services.

81.     Counter-Defendants' use of the GHOSTBED mark and GhostBed's use of the CASPER mark are without Casper's permission or authority and have been with full knowledge of Casper's rights.

82.     Counter-Defendants' conduct as described above constitutes false association, false designation of origin and unfair competition in violation of Section 43 of the Lanham Act, 15 § U.S.C. 1125(a)(1)(A).

83.     Counter-Defendants' intentional acts of false association, false designation of origin and unfair competition have caused and are causing great and irreparable injury and damage

34

to Casper's rights, business, goodwill and reputation and, unless restrained, will cause further irreparable injury and damage, leaving Casper with no adequate remedy at law.

**COUNT IV**
**FEDERAL FALSE ADVERTISING**
**(15 U.S.C. § 1125(a)(1)(B))**

84.     Casper incorporates by reference Paragraphs 1 through 62 above as fully set forth herein.

85.     As more particularly described in Paragraphs 28 through 55 above, Counter-Defendants have engaged in false and misleading advertising of the GhostBed products by:

(a) using the word "NATURAL" in commercial advertising and promotion in a manner that falsely or misleadingly represented that GHOSTBED mattresses are made from all natural materials,

(b) publishing false and misleading statements about the ratings given by third-party mattress reviewers to GhostBed and Casper mattresses,

(c) publishing a false and misleading Google rating of GhostBed mattresses,

(d) publishing a false and misleading statement that Casper does not offer a matching mattress foundation,

(e) publishing a false celebrity endorsement of GhostBed mattresses,

(f) publishing a false advertisement claim that GhostBed had been in business for 15 years

(g) causing the publication of a favorable review of a GhostBed mattress and Nature's Sleep mattress topper on Amazon by an illegitimate "Verified Purchaser".

(The foregoing subparagraphs (a)-(g) hereinafter are collectively and severally referred to as the "**False Advertisements**".)

86.     The False Advertisements were made in commercial advertising or promotion.

35

87.     The False Advertisements were false or misleading.

88.     The False Advertisements deceived consumers or had the capacity to deceive consumers.

89.     The False Advertisements had a material effect on consumer purchasing decisions.

90.     The products misrepresented by the False Advertisements affected interstate commerce.

91.     Casper has been injured as a result of the False Advertisements.

92.     Counter-Defendants' conduct constitutes false advertising in violation of Section 43 of the Lanham Act, 15 § U.S.C. 1125(a)(1)(B).

93.     Counter-Defendants' False Advertisements were published willfully and intentionally.

94.     Counter-Defendants' intentional False Advertisements have further caused and is causing great and irreparable injury and damage to Casper's rights, business, goodwill and reputation and, unless restrained, will cause further irreparable injury and damage, leaving Casper with no adequate remedy at law.

## COUNT V
## COMMON LAW UNFAIR COMPETITION

95.     Casper incorporates by reference Paragraphs 1 through 62 above as if fully set forth herein.

96.     Casper, GhostBed and Nature's Sleep are competitors in the mattress and bedding products industry.

97.     The acts of GhostBed and Nature's Sleep as described herein constitute unfair competition under the common law of Florida.

36

98.     GhostBed's and Nature's Sleep's actions described above have caused and are causing great and irreparable injury and damage to Casper's rights, business, goodwill and reputation and, unless restrained, will cause further irreparable injury and damage, leaving Casper with no adequate remedy at law.

### COUNT VI
### FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
### (Florida Statute §§ 501.201 – 501.213)

99.     Casper incorporates by reference Paragraphs 1 through 62 above as fully set forth herein.

100.    Counter-Defendants' conduct as described herein constitutes deceptive and unfair trade practices under Florida's Deceptive and Unfair Trade Practices Act, including (a) the adoption and use of the mark GHOSTBED to unfairly compete with Casper and to deceive consumers into believing that GhostBed is somehow affiliated or associated with Casper, (b) use of the mark CASPER to unfairly compete with Casper and to deceive consumers into believing that GhostBed is somehow affiliated or associated with Casper, (c) publishing a false and misleading comparative review of GhostBed and Casper mattresses that falsely states that Casper does not offer a matching foundation for its mattress, (d) harassing Casper's customers and potential Customers, (e) emphasizing the word "**NATURAL**" in commercial advertising and promotion, thereby falsely misleading consumers into believing that GhostBed mattresses are made from all "natural" materials, (f) publishing false and misleading statements about GhostBed and Casper mattress ratings given by third-party mattress reviewers, (g) publishing a false and misleading Google rating of GhostBed mattresses, (h) publishing a false celebrity endorsement of GhostBed mattresses, (i) publishing false advertisements claiming that GhostBed has been in

business for 15 years, (j) causing the publication of a favorable review of a GhostBed mattress and Nature's Sleep mattress topper on Amazon by an illegitimate "Verified Purchaser", and (k) engaging in an illicit scheme to pay Monahan to review GhostBed's products more favorably than GhostBed's competitor's products and to disseminate false or misleading content about GhostBed's competitor's products, including Casper's products, on the honestmattressreviews.com website and through social media, all without disclosing the significant business and financial relationship between Monahan and GhostBed.

101.    Casper has been damaged as a direct and proximate result of Counter-Defendants' deceptive and unfair trade practices as described above.

102.    Counter-Defendants' actions described herein were and are willful and intentional.

## **PRAYER FOR RELIEF**

WHEREFORE, Casper prays for the following relief and judgment:

1.    Entry of a preliminary and permanent injunction enjoining Counter-Defendants, their officers, directors, agents, representatives, successors and assigns, licensees, employees, consultants, affiliates, attorneys and all  persons in privity or acting in concert or in participation with any of them, from:

a.    Using the GHOSTBED name and mark, and any variations thereof, in any manner, form, or medium likely to cause confusion, mistake, and/or deception as to the origin, affiliation, connection, approval, or sponsorship of Counter-Defendants' products and services;

b.    Using the CASPER name and mark, and any variations thereof, in any manner, form, or medium likely to cause confusion, mistake, and/or deception as to the

origin, affiliation, connection, approval, or sponsorship of Counter-Defendants' products and services;

    c.    Engaging in any false, misleading, or deceptive advertising practices, including by failing to disclose compensation paid to Ryan Monahan in connection with product reviews, falsely advertising the quality of their products, falsely advertising ratings given to their products, falsely advertising the length of time they have been in business, making false celebrity endorsement claims, harassing Casper's customers and making false statements about Casper's products; and

    d.    Engaging directly or indirectly in any practices, including those complained of herein, that tend to compete unfairly with Casper or injure Casper, its business, or the goodwill related to Casper's business or the CASPER mark;

2.    An order directing Counter-Defendants to account to Casper for any and all profits obtained by Counter-Defendants by reason of their wrongful conduct complained of herein, and awarding Casper the full amount of Counter-Defendants' profits pursuant to 15 U.S.C. § 1117(a) and all other applicable law;

3.    An award to Casper for three times the amount of all damages sustained by Casper by reason of Counter-Defendants' unlawful conduct, including lost sales and business opportunities, pursuant to 15 U.S.C. § 1117(a) and all other applicable law;

4.    An award of all other monetary damages in an amount to be proven at trial;

5.    An award to Casper for all costs and reasonable attorneys' fees incurred in connection with this action, pursuant to 15 U.S.C. § 1117(a), Florida Statutes § 501.2105 and all other applicable law; and

6.    Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Casper hereby demands a trial by jury for all counterclaims so triable.

Dated: October 18, 2017                    Respectfully submitted,

**PERETZ, CHESAL & HERRMANN, P.L.**
*Attorneys for Casper Sleep, Inc.*
2 S. Biscayne Blvd., Suite 3700
Miami, Florida 33131
Tel: 305-341-3000
Fax: 305-371-6807


By: /s/Steven I. Peretz
       Steven I. Peretz (Fla. Bar. No. 329037)
       speretz@pch-iplaw.com
       Michael B. Chesal (Fla. Bar No. 775398)
       mchesal@pch-iplaw.com
       Josh E. Saltz (Fla. Bar. No. 70521)
       jsaltz@pch-iplaw.com
       Alberto Alvarez (Fla. Bar. No. 106859)
       aalvarez@pch-iplaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on October 18, 2017 on all counsel or parties of record in the manner specified on the Service List below.

/s/Steven I. Peretz

## SERVICE LIST

Alan Michael Grunspan
E-Mail:  agrunspan@cfjblaw.com
Ethan Horwitz
E-Mail:  ehorwitz@carltonfields.com
David James Smith
E-Mail:  dsmith@carltonfields.com
Angela Puentes-Leon
E-mail: APuentes-Leon@cfjblaw.com
Carlton Fields Jorden Burt, P.A.
Suite 4200
100 S.E. Second Street
Miami, FL 33131
T:  305.530.0050
F:  305.530.0055
*Counsel for Plaintiffs, GhostBed, Inc.*
*and Werner Media Partners, LLC*
**Via CM/ECF**

Andrew Kemp-Gerstel
E-Mail:  akg@lgplaw.com
Jana M. Montiel
E-Mail:  jmm@lgplaw.com
Peter J. Maskow
E-Mail:  pjm@lgplaw.com
Liebler, Gonzalez & Portuondo
Courthouse Tower – 25th Floor
44 West Flagler Street
Miami, Florida 33130
T: (305) 379-0400
F: (305) 379-9626
*Counsel for Defendant, Red Antler, LLC*
**Via CM/ECF**